## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| DECEMBREA LABRON RUTLEDGE, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:18-cv-01878-JEO |
| v. | ) ) | |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Decembrea Labron Rutledge brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her Supplemental Social Security ("SSI") and  Disability Insurance Benefits ("DIB").  (Doc. 1).[1]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction of this court for disposition of the matter.  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). (Doc. 10).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be remanded.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on July 13, 2015, and July 30, 2015, respectively, alleging disability beginning July 13, 2015. (R. 15, 160-72).[2]  After her applications were denied initially, (R. 90-96), Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 99-100).  After the video hearing, the ALJ issued a decision on December 11, 2017, finding Plaintiff not disabled. (R. 15-27).  Plaintiff then filed a request for review of the ALJ's decision, and the Appeals Council ("AC") denied Plaintiff's request for review. (*Id*. at 1-6).  The matter is properly before this court.

# II. FACTS

Plaintiff was born on March 9, 1982, and was thirty-three years old at the time she filed her applications. (R. 25, 160, 167).  She has a seventh grade education. (R. 25, 38).  In her applications, she alleges that she became disabled as of July 13, 2015, as a result of asthma, breathing problems, and costochondritis.[3]

---

[2] References herein to "R. __" are to the administrative record found at documents 7-1 through 7-17 in the court's record.  The page number references are to the page numbers in the lower right-hand corner of each page in the record.

[3] Costochondritis is an inflammation of the cartilage that connects a rib to the breastbone. Treatment focuses on easing pain while waiting for the condition to improve on its own, which can take several weeks or longer.  *See* Mayo Clinic Website, https://www.mayoclinic.org/diseases-conditions/costochondritis/symptoms-causes/syc-20371175 (last visited August 8, 2019).

(R. 160, 167, 255). Sometime after filing her applications, she also alleged disability on account of bipolar disorder, anxiety disorder, and posttraumatic stress disorder ("PTSD"). (R. 19, 37).

Following Plaintiff's administrative hearing, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of July 13, 2015. (R. 18). The ALJ further found that Plaintiff had the medically determinable severe impairments of asthma, anxiety disorder, PTSD and bipolar disorder. (*Id.*). She also found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (*Id.* at 18-22). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [S]he can occasionally climb ramps and stairs, stoop and crouch; she should never climb ladders, ropes or scaffolds, kneel or crawl; she can have only occasional exposure to extreme heat and cold, humidity at atmospheric conditions (dust, odors, fumes, pulmonary irritants). She should have no exposure to hazards such an unprotected heights and dangerous machinery. She would be capable of performing simple, routine tasks in an environment where there are only occasional workplace changes and where contact with supervisors, co-workers or the general public is occasional.

(R. 22). Based on this RFC and the testimony from the vocational expert, the ALJ found that Plaintiff could not return to her past relevant work as a chicken eviscerator. (R. 25). Given her age, education and RFC, however, the ALJ found

that she could perform other jobs existing in significant numbers in the national economy. (R. 25-26). Therefore, the ALJ found Plaintiff was not disabled from July 13, 2015, through the date of the decision. (*Id*. at 26).

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If

the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(b) & 416.920(a)(4). Specifically, the

Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful
> activity; (2) has a severe medically determinable physical or mental
> impairment; (3) has such an impairment that meets or equals a Listing
> and meets the duration requirements; (4) can perform his past relevant
> work, in light of his residual functional capacity; and (5) can make an
> adjustment to other work, in light of his residual functional capacity,
> age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[4]   The

plaintiff bears the burden of proving that he was disabled within the meaning of the

Social Security Act.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see*

*also* 20 C.F.R. § 404.704.  The applicable "regulations place a very heavy burden

on the claimant to demonstrate both a qualifying disability and an inability to

perform past relevant work."  *Id.*

## V. DISCUSSION

Although not organized in this manner, Plaintiff essentially asserts three

claims of error by the ALJ: (1) the ALJ failed to accord proper weight to Plaintiff's

treating physicians and failed to show good cause for discounting their opinions,

(doc. 11 at 25-29); (2) the ALJ erred in finding Plaintiff's asthma does not meet

Listing 3.03, (*id*. at 36-37); and (3) the ALJ's RFC finding is not supported by

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding
precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

substantial evidence, is conclusory and violates SSR 96-8p, (*id*. at 30-36).   The court addresses each argument in turn and remands on the basis of the third argument.

## A.  Treating Physician Opinions

Plaintiff's first argument is that the ALJ erred in discounting the opinions of her treating physician, Dr. McCain, and her treating psychiatrist, Dr. Feist. (Doc. 11 at 25-29).   Plaintiff contends that the opinions of both doctors were well supported by the medical records and should have been given substantial weight. (*Id*. at 28).   Additionally, Plaintiff seems to argue that the ALJ did not clearly articulate the reasons for giving less weight to her treating physicians.[5] (*Id*. at 28-29).

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).   The Eleventh Circuit Court of Appeals has stated that "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's

---

[5] In support of this argument, Plaintiff's brief lists twelve cases where district courts have remanded cases when an ALJ did not state the particular weight given to different medical opinions.  (Doc. 11 at 29).  The brief does not discuss these cases at all or even attempt to apply these cases to the facts presented by the record here.  Regardless, these cases are inapplicable to the record at hand because the ALJ clearly articulated the weight given to both Dr. McCain and Dr. Feist, as well as the reasons for discounting their opinions.

opinion was conclusory or inconsistent with the doctor's own medical records."

*Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In rejecting a

medical opinion, the ALJ must clearly articulate his or her reasons for doing so.

*Id*. The court first addresses the opinion of Dr. McCain and then moves on the

opinion of Dr. Feist.

### 1. Dr. McCain

Although not abundantly clear by the argument presented in Plaintiff's brief,

it seems that Plaintiff contends that the ALJ erred when she gave no weight to the

physical capacity form completed by Dr. McCain on September 23, 2016. (Doc.

11 at 28, R. 25, 555). The one-page form describes Plaintiff's condition as

"problems with her breathing due to worsening asthma requiring the use of

intermittent oral steroid[s]." (R. 555). The form describes the side effects Plaintiff

experiences from her medications are weight gain from the steroids and "may have

problems with fast heart rate." (*Id*.). As far as limitations, Dr. McCain circled the

following on the form concerning Plaintiff's physical capacities: Plaintiff can sit

for four hours, stand for less than 30 minutes, and would be expected to lay down,

sleep or sit with legs propped for four hours in an 8-hour day.[6] (*Id*.). It further

---

[6] Dr. McCain underlined "lying down" when answering this question. (R. 555).

states Plaintiff would be expected to be off task 30% in an 8-hour day and would

miss 10 days in a 30-day period due to physical symptoms. (*Id.*). The form states

the limitations exist back to July 13, 2015, and are expected to last twelve or more

months.[7] (*Id.*).

> The ALJ gave Dr. McCain's opinion no weight for the following reasons:

> There is nothing in [Dr. McCain's] medical records to indicate that the claimant would need to lie down for four hours during the day; no support in his treatment records that the claimant would be off task 30 percent of the day, (i.e. no rational explanation why pulmonary issues would necessitate that); and no support in his treatment records that the claimant would miss ten days of work a week because of her impairments.

(R. 25). The court concludes that the ALJ has shown "good cause" for rejecting

Dr. McCain's opinions expressed on the physical capacities form.

First, the physical capacities form is a series of questions where Dr. McCain

circled responses or filled in provided blanks with absolutely no explanation for

the answers given. (R. 555). It is conclusory and has limited probative value.

Indeed, several courts have criticized "form reports" such as the one Dr. McCain

provided where a physician merely checks off a list of symptoms without

providing an explanation of the evidence that supports the decision. *See Wilkerson*

---

[7] Dr. McCain also checked that Plaintiff's asthma met Listing 3.03 for both "chronic asthmatic bronchitis" and "attacks in spite of prescribed treatment and requiring physician intervention occurring at least once every 2 months or at least six times a year . . . ." Plaintiff discusses the rejection of this opinion as a separate argument, (doc. 11 at 36-337), and the court does likewise.

*ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) ("form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding use of "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

Second, the relevant treatment notes from Dr. McCain do not support such limitations. Instead, the notes show Plaintiff was diagnosed with asthma in December 2012 and notes dating shortly before her onset date note a persistent cough aggravated by allergens and that Plaintiff "had to quit her job due to fumes at work." (R. 503). After her onset date, Plaintiff saw Dr. McCain on a somewhat routine basis and complained of shortness of breath, chest pain, exacerbations caused by dry cough, seasonal changes, sore throat and nasal drainage. (*See* R. 531-37, 600, 655-60, 662-68, 670-76, 678-85, 695-701, 705-1, 714-20, 730-36). There are no notations regarding asthma attacks, repeated hospitalizations, or

other extreme breathing difficulties. (*See id*.). The treatment notes continually advise Plaintiff to quit smoking, but there is no indication that Plaintiff took this advice, despite her breathing difficulties. (*Id*.) Results of her examinations were largely unremarkable, and Dr. McCain proscribed a routine course of treatment. (*See id*.). Simply put, none of the medical records from Dr. McCain supports the extreme limitations expressed in the medical source statement. As such, the court finds that good cause exists to give the statement no weight.

### 2. Dr. Feist

Again, although not abundantly clear by the argument presented in Plaintiff's brief, it seems that Plaintiff contends that the ALJ erred when she gave no weight to the mental health source statement signed by Plaintiff's psychiatrist, Dr. Feist, on March 16, 2016. (Doc. 11 at 28, R. 19, 24-25, 554). The one-page form provides that Plaintiff had some limitations based on her mental health. (R. 554). The form asks the person completing it to circle "yes or no" to the following questions:

- Can Ms. Rutledge understand, remember or carry out very short and simple instructions?
- Can Ms. Rutledge maintain attention, concentration and /or pace for periods of at least two hours?
- Can Ms. Rutledge perform activities within a schedule and be punctual within customary tolerances?
- Can Ms. Rutledge maintain an ordinary routine without special

supervision?

- Can Ms. Rutledge adjust to routine and infrequent work changes?
- Can Ms. Rutledge interact with supervisors?
- Can Ms. Rutledge interact with co-workers?
- Can Ms. Rutledge maintain socially appropriate behavior and adhere to basis standards of neatness and cleanliness?

(*Id*.). The form signed by Dr. Feist circled "no" to every question. (*Id*.). It also states that Plaintiff would be off-task 98% of an 8-hour day and that she would miss 20-25 days a month due to her psychological symptoms. (*Id.*). The form states the limitations existed back to July 13, 2015, and listed the side effects of her medications as "headaches, dizziness, spinning sensation, drowsiness, nervousness, anxiety, tiredness, increase sweating, dry mouth, nausea." (*Id*.).

The ALJ gave no weight to the opinion of Dr. Feist for multiple reasons. First, the ALJ noted that it appeared that therapist Aundrea D. Swain, MS actually completed the form and Dr. Feist merely signed and dated it. (R. 19; *compare* R. 553 and 554). The forms have the same handwriting and are "identical except for the signatures."[8] (R. 19). The ALJ noted that the form lists side effects of medication that are not addressed in the treatment notes. (*Id*.). As the ALJ pointed out, Ms. Swain's notes documented that Plaintiff had just started taking

---

[8] This is not completely accurate. The form signed by Dr. Feist lists a few additional side effects of medications. (R. 553-54).

prescribed medication at some unspecified point after February 16, 2016. (R. 19, 568). Then, in her next visit on March 16, 2016, Plaintiff said her medication was helping with her anger, without mention of any side effects. (*Id*.). Additionally, the ALJ found that "[t]here is virtually noting in the claimant's treatment notes from her three meetings with Ms. Swain and her initial meeting with Dr. Feist, as described above, to support any of the claimant's reported functional limitations." (*Id*.).

The court concludes that the ALJ has shown "good cause" for rejecting the mental health source statement signed by Dr. Feist. First, as the Commissioner pointed out, Dr. Feist had only seen Plaintiff on one occasion at the time he signed the mental health statement.[9] As such, at the time, he was not a true treating physician, but more akin to a one-time examiner. The opinion of a one-time examiner, however, is entitled to no deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin.,* 553 F. App'x 914, 917 (11th Cir. 2014). Additionally, much like the form from Dr. McCain, the mental health source statement is a series of yes or no questions with absolutely no explanation for the answers given. (R. 554). It is conclusory and has

---

[9] The court agrees with the ALJ that Dr. Feist did not complete the form, but merely signed it. A comparison of the two forms shows identical handwriting, and handwriting that is much more legible than that of the treatment notes from Dr. Feist.

limited probative value. *See Wilkerson ex rel. R.S.*, 2012 WL 2924023, at *3; *Mason*, 994 F.2d at 1065 (3d Cir. 1993); *Foster*, 410 F. App'x at 833; *Hammersley*, 2009 WL 3053707, at *6 ("The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.")).

Moreover, Dr. Feist's treatment notes do not support the opinions stated in the mental health source statement. In the one visit before the form was completed, on January 27, 2016, Plaintiff saw Dr. Feist at CED Mental Health Center for depression. (R. 570). Dr. Feist noted that Plaintiff's mood/affect was depressed and anxious, she reported insomnia, her thought process was circumstantial, and her thought content was obsessive. (*Id*.). However, he noted that her insight was good, her behavior was appropriate, and her attention and concentration were adequate.[10] (*Id*.). Dr. Feist recommended counseling and returning in one to three months. (*Id*.).

In summary, and for the reasons discussed above, the court concludes that the ALJ did not err in according no weight to the physical capacities form completed by Dr. McCain and the mental health source statement signed by Dr.

---

[10] The handwritten notes are largely illegible but from what the court can glean, Plaintiff reported serious family problems. (R. 570).

Feist. The ALJ clearly articulated her reasons for rejecting the opinions and the court agrees that neither opinion was supported by the treatment records.

## B. Listing 3.03

Plaintiff also argues that the ALJ erred in finding that her asthma does not meet or equal in severity Listing 3.03. (Doc. 11 at 36-37). Plaintiff bases this claim solely on the opinion of Dr. McCain in the physical capacities form, who opined that Plaintiff's asthma met the listing. (*Id*.). As discussed in detail above, however, the ALJ gave no weight to the opinions expressed by Dr. McCain on the physical capacities form and the court has already found that substantial evidence supports this determination.

Regardless, there is no medical evidence in the record to support a finding that Plaintiff's asthma meets or equals Listing 3.03. The applicable Listing 3.03B,[11] as correctly noted by the ALJ, requires three hospitalizations within a 12-month period and at least 30 days apart, and each hospitalization must last at least 48 hours. 20 C.F.R. pt. 404, subpt. P, app'x 1. There is simply no evidence of

---

[11] The physical capacities form completed by Dr. McCain refers to an older version of Listing 3.03. (*See* R. 555). While the older version of the listing was applicable at the time Dr. McCain completed the form, the revised version was in effect at the time of the ALJ's decision. *See* Revised Medical Criteria for Evaluating Respiratory System Disorders, 81 Fed. Reg. 37138-01, 2016 WL 3185335, at *37138 (June 9, 2016). The rule provides that "Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." *Id*. at *37139 n.3.

exacerbations or complications resulting in three 48-hour hospitalizations during the relevant time period. As such, substantial evidence supports the ALJ's determination that Plaintiff's asthma does not meet or equal in severity Listing 3.03.

## C. RFC Determination

Plaintiff next argues that the RFC finding is not supported by substantial evidence.[12] (Doc. 11 at 30-32; Doc. 13 at 4-7). Specifically, she contends that the RFC is conclusory and violates Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. (*Id.*). She also argues that the RFC is not supported by substantial evidence because the ALJ posed an incomplete hypothetical to the vocational expert, (*id.* at 33-34), and did not consider the side effects of Plaintiff's medications, (*id.* at 34). The Commissioner responds that the ALJ's RFC finding limiting Plaintiff to light work with extensive postural, environmental and mental limitations is not conclusory, complies with SSR 96-8p, and is supported by substantial evidence. (Doc. 12 at 16-19). After a close examination, the court concludes that there is insufficient information in the records to find that

---

[12] Plaintiff's citation to *Thomason v. Barnhart*, 344 F. Supp. 2d 1326 (N.D. Ala. 2004), for the proposition that the RFC assessment is unsupported by substantial evidence because there was no opinion evidence from a physician precisely matching the limitations in the RFC finding is unpersuasive. The determination of a claimant's RFC is an administrative determination left for the Commissioner and not reserved for medical advisors. *See* 20 C.F.R. § 404.1546.

substantial evidence supports the ALJ's RFC determination regarding Plaintiff's mental impairments.

SSR 96–8p regulates the ALJ's assessment of a claimant's RFC. Under SSR 96–8p, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p at 1. The regulation specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96–8p at 6.

The Eleventh Circuit has held that, even when the ALJ could have been "more specific and explicit" in his or her findings with respect to a plaintiff's "functional limitations and work-related abilities on a function-by-function basis," they nonetheless meet the requirements under SSR 96–8p if the ALJ considered all of the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (an ALJ's RFC finding is sufficiently detailed despite lacking an express discussion of

every function if there is substantial evidence supporting the ALJ's RFC assessment). In addition, the ALJ is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow the court to conclude that the ALJ considered the plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 1211.

Plaintiff does not complain about her RFC with regard to her physical impairments. Instead, the focus is on her mental impairments. The ALJ included Plaintiff's anxiety disorder, PTSD and bipolar disorder as severe impairments. (R. 18). While the ALJ found that Plaintiff's mental impairments did not meet the paragraph B criteria[13] to meet the applicable listing, she stated that the RFC reflected the degree of limitations found in the paragraph B analysis. (R. 20-22). In the Plaintiff's RFC, however, the only limitation relating to these conditions is that she "would be capable of performing simple, routine tasks in an environment where there are only occasional workplace changes and where contact with supervisors, co-workers or the general public is occasional." (R. 22).

---

[13] "Paragraph B" refers to the listing criteria for mental disorders. Under "paragraph B," the claimant's mental impairment must result in at least two of the following: marked restriction of daily living activities, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.08.

The analysis by the ALJ with regard to her mental impairments and their potential limitations on her ability to work, however, is not complete and does not include a full picture of the evidence in the record. Although not necessarily required, there is not a delineation regarding each severe mental impairment, but instead the analysis is more general and the discussion of the different impairments combined. The severe mental impairments here, however, potentially could require different limitations in their relation to her ability to work, and at least requires some discussion of those differences.

There is also little discussion of Plaintiff's testimony and the treatment notes regarding her auditory and visual hallucinations,[14] anger problems,[15] extreme anxiety and paranoia, and the minimal progress with regard to her mental health from late 2015 until the date of decision. (R. 563-86, 758-60). For instance, Dr.

---

[14] According to the treatment notes from Swain and Dr. Feist, Plaintiff experiences auditory and visual hallucinations of her deceased sister. In her intake assessment, Plaintiff reported: "in 2006 she saw her sister laying dead where she was shot and killed. . . . very emotional because she blames herself for her sister's death. Sister called her to come and get her several times and she was telling her she was on her way but never went and then received a call of the shooting and when she arrived on the scene her sister was dead and she saw her." (R. 581).

[15] For instance, Plaintiff testified that she has "a real bad behavior problem" and "used to go to jail all the time for fighting." (R. 53). She stated that she has probably been incarcerated 50 times and has "a lot" of convictions for assault. (R. 53-54). The ALJ did mention her arrest for domestic violence in October 2015, but did so only to insinuate that the arrest was the impetus for Plaintiff seeking mental health treatment. (R. 23). Plaintiff also reported that she was fired from a number of jobs after verbal altercations with supervisors and other employees. (R. 59-60).

Feist's March 2016 assessment of Plaintiff seems to signal a decline in the areas of insight, attention and concentration, behavior (from "appropriate" to "agitated"), and risk (from "moderate" to "high"). (R. 566, 570). He also notes her auditory and visual hallucinations. (R. 566). Instead, the ALJ focused on Plaintiff's missed appointments and her noncompliance with medication, but her (Plaintiff's) testimony gives some reasoning for this noncompliance.[16] Additionally, although the ALJ noted that Plaintiff was prescribed medication by Dr. Feist, there is absolutely no discussion of the three drugs - Neurontin, Cymbalta and Haldol - that Plaintiff had been taking for over a year or their side effects, especially in combination. (R. 40-42, 566). Further, although the ALJ noted "her initial determination was not evaluated for a mental impairment by a State agency psychiatrist or psychologist" because her application did not include her mental impairment, the ALJ was free to order a consultative psychological exam to develop the record when it is lacking.

While the ALJ did discount Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms with regard to her

---

[16] Plaintiff testified that she could not afford her medication and she has to have help to physically pick up the medications since she does not drive. (R. 43-44).

mental impairments,[17] there is simply not enough evidence for the court to conclude that substantial evidence supports Plaintiff's RFC regarding her mental impairments. Instead, the court determines that a remand is necessary for the ALJ to more closely evaluate Plaintiff's severe mental impairments of anxiety disorder, PTSD and bipolar disorder and their potential limitations on her ability to work.

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be reversed and remanded. An appropriate order will be entered separately.

**DATED**, this the 19th day of August, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[17] The reasons stated by the ALJ include: (1) her medical records from another facility from 2012 until April 2017 do not note treatment for her mental health impairments and only reference a screening for depression; (2) she did not allege a mental impairment in her application; and (3) she did not seek mental health treatment until after being charged with domestic violence in October 2015. (R. 23). The ALJ also noted her noncompliance with prescribed treatment in the form of missing appointments and not taking medications, but admitted that "many details are lacking." (*Id*.).